IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN CARL SUTTERLEY, | § | |
| TDCJ-CID NO.1201260, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-04-2102 |
| | § | |
| FLORENCE MORRIS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff John Carl Sutterley is a federal prisoner. While a state inmate, plaintiff, proceeding *pro se* and *in forma pauperis*, filed a complaint alleging violations of his civil rights under 42 U.S.C. § 1983. (Docket Entry No.1). He also filed a more definite statement of his claims. (Docket Entry No.7). Defendants have filed a motion to dismiss (Docket Entry No.14) and plaintiff has filed a response to the motion. (Docket Entry No.21). For the reasons to follow, the Court will grant defendants' motion and dismiss this complaint.

BACKGROUND

In his complaint and more definite statement, plaintiff alleges that on February 24, 2004, around 7:00 a.m., plaintiff was working in the butcher shop at the Pam Lyncher State Jail, cutting frozen hamburger meat. (Docket Entry No.7). The room temperature was colder than normal. Halfway through the second barrel, shavings from the meat got caught underneath the roll of hamburger and caused it to spin. The roll hit the saw blade and kicked back, cutting plaintiff's index and middle fingers at the first joint. (*Id.*). Plaintiff went to the sink and placed a cold compress on his hand and then went to the gate and waited for medical assistance. (*Id.*).

Paramedics were called. They wrapped his hand and gave him an antibiotic and pain medication. Plaintiff was taken to Ben Taub Hospital in Houston, where his index finger was reattached on February 26th. His middle finger could not be reattached. (*Id.*). Plaintiff was taken to John Sealy Hospital in Galveston, Texas for follow-up treatment on March 3, 2004. (*Id.*). Plaintiff did not receive physical therapy after the operation. (*Id.*). Thereafter, plaintiff received the following treatment:

1. On March 26, 2004, plaintiff saw Physician's Assistant Robert D.Wilkins for an infection on his index finger. Wilkins advised him to watch the spot over the weekend and to return on the 29th if it worsened. On the 29th, medical staff made an appointment for plaintiff at John Sealy Hospital.

2. On March 31, 2004, plaintiff saw Dr. Baxter at UTMB-Galveston. Plaintiff was given new medication. Dr. Baxter lanced the infection on plaintiff's finger and removed two pins. He told plaintiff to return in six weeks.

3. On April 15, 2004, plaintiff placed a sick call to medical because his hand was turning purple. He saw Dr. Murray on April 19, 2004, who told him she did not know why his hand was turning purple because she had not dealt with an amputation before.

4. On May 15, 2004, plaintiff went on the medical chain to the Estelle Unit, where he thought he would receive physical therapy. He did not see a doctor and did not receive therapy.

5. On May 26, 2004, plaintiff sent a sick call to Robert D. Wilkins, questioning why he had not received physical therapy. He was told to report to the clinic on the 28th.

6. On May 28, 2004, plaintiff saw Dr. Murray, who told him that she had e-mailed the orthopedic clinic regarding therapy but she could not make them do anything.

(*Id.*).

Plaintiff filed several grievances about his medical care and the lack of physical therapy. The grievances were denied. On July 21, 2004, plaintiff saw Dr. Mayco, who informed him that there was no therapy for his condition except for plaintiff to bend his own fingers. (*Id.*).

Plaintiff claims the kitchen and medical departments are to blame for his injury and that no one person is liable. (*Id.*). However, in his original complaint, plaintiff complains that Captain Morris, who was the kitchen captain, failed to provide updated safety training with respect to the saw and was not present in the kitchen when the accident occurred. (Docket Entry No.1). He further complains that Dr. Murray was negligent in handling his finger. (*Id.*). Plaintiff also sues Hobart, the saw manufacturer, for failure to provide up-dated safety standards. (*Id.*). Plaintiff seeks compensatory relief. (*Id.*).

Defendants Florence Morris and Dr. Jane Murray move to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry No.14). Defendants maintain that assuming that plaintiff's allegations were true, plaintiff cannot overcome their entitlement to Eleventh Amendment and qualified immunity. (*Id.*).

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."  *Shipp v. McMahon*, 234 F.3d 907, 911 5th Cir.2000) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2nd ed.1990)), *overruled on other grounds by McClendon v. City of Columbia*, 305 F3.d 314, 328 (5th Cir. 2002).  A plaintiff "must plead specific facts, not mere conclusory allegations."  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (citation omitted).  The Court will not accept as true any conclusory allegations or unwarranted deductions of fact.  In ruling on such a motion, the Court cannot look beyond the pleadings, including attachments thereto.  Fed. R. Civ. Proc. 12(b)(6); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

<u>Eleventh Amendment Immunity</u>

Eleventh Amendment immunity bars a suit in federal court by a citizen of a state against his own state or against a state agency or department.  *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990).  Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state.  *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996).  This immunity extends to suits for monetary damages against state officials in their official capacity.  *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court").  Therefore, plaintiff fails to state a claim for monetary damages against defendants in their official capacity.

4

### Qualified Immunity

The defense of qualified immunity protects § 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The threshold issue in a qualified immunity analysis is whether officer's conduct violated a constitutional right, based upon the facts alleged, taken in the light most favorable to the party asserting the injury. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no constitutional right was violated, the court need not inquire further. *Id.* If, however, a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *Id.* at 206.

### Dr. Murray

Plaintiff complains that Dr. Murray was negligent in handling his re-attached finger. (Docket Entry No.1). He specifically complains that Dr. Murray told him she did not know why his hand was turning purple because she had not dealt with an amputation and she did not provide nor make provisions for him to obtain physical therapy for his finger. (*Id.*).

Plaintiff's right to medical care arises from the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105-10 (1976). To state a claim, plaintiff must allege facts to show that he has suffered deliberate indifference to his serious medical needs. *Id.* at 105-10. An official acts with deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference." *Id.* at 837-38. An official is deliberately indifferent if (1) he was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) he actually drew that inference; and (3) his response indicates the official subjectively intended that harm occur. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001).

Mere negligence, however, does not constitute a section 1983 cause of action. *Estelle*, 429 U.S. at 106. An inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference. *Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the [prohibited conduct]." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In this case, plaintiff alleges no facts that would give rise to a claim that Dr. Murray acted with deliberate indifference to his serious medical needs. Plaintiff received medical treatment for his condition. Plaintiff does not indicate that Dr. Murray was trained to provide the therapy that he sought, especially in light of her confession that she had not dealt with an amputation before. He acknowledges, however, that she told him that she had requested such therapy for him. Moreover, plaintiff categorizes her actions as malpractice, which does not rise to a constitutional violation.

In his response to the motion to dismiss, plaintiff complains that he did not receive medical care even though he was seen by medical care-givers. (Docket Entry No.21). By plaintiff's own account, he received antibiotics, pain medication, and wound care from medical providers. Plaintiff fails to allege facts that give rise to a claim of deliberate indifference to his serious medical needs; therefore, this claim is subject to dismissal.

### Captain Morris

Plaintiff complains that Captain Morris was not in the kitchen when the accident occurred and that she failed to provided updated safety training on the saw. In short, plaintiff complains that Morris failed to provide a safe work environment by her absence in the kitchen and her failure to provide updated training.

To prevail on a claim of deliberate indifference to plaintiff's safety, plaintiff must prove both that Morris knew of and disregarded an excessive risk to his safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). A prison official is liable only if he is deliberately indifferent to a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Id.* To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 839-40. A complainant, however, may rely on circumstantial evidence indicating that because the risk was obvious, the official must have known of the risk to the inmate. *See Hope v. Pelzer*, 536 U.S. 730, 738. Mere negligence or neglect do not constitute deliberate indifference. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1997).

Plaintiff states no facts in his complaint or more definite statement that Morris was deliberately indifferent to a risk of serious harm by her absence from the kitchen or by failing to give him additional training. He further fails to state facts that would show that the saw that he was using was defective. However, in his response to the motion to dismiss, plaintiff claims that sometime

between July 2002 and June 2003, he informed Morris that he could not cut frozen hamburger meat without some new guards on the saw. (Docket Entry No.18). Plaintiff claims that her response was to get back to work. (*Id.*). Plaintiff further states that at that time, the slicer he was using "froze up" and needed to be replaced. (*Id.*). He informed Morris, who told him to make the best of it. (*Id.*). A month later, plaintiff jump-started the slicer and cut three fingers. (*Id.*). Morris told him he was reckless and put him on the second shift. (*Id.*).

Plaintiff's allegations that he informed Morris about the condition of kitchen equipment in 2002 and 2003 do not show that Morris was aware that the saw that plaintiff was using in February of 2004 was defective, that plaintiff needed additional training on the saw, or that plaintiff faced a serious risk of harm from the saw. In short, plaintiff states no facts that show that Morris was aware that he faced a serious risk of harm from the saw that he was using to cut frozen hamburger meat in February of 2004 or from the procedure he employed to cut the meat. Because he fails to state a claim upon which relief may be granted, the Court will dismiss this claim.

### Hobart

Finally, plaintiff sues Hobart, the saw manufacturer. A plaintiff seeking relief under 42 U.S.C. § 1983 must establish two essential elements: that the conduct complained of was committed under color of state law, and that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990). A private company is not a state actor and is not subject to suit under § 1983. Because plaintiff cannot prove any set of facts in support of his claim against Hobart under § 1983, his claim against Hobart will be dismissed.

CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants Morris and Murray's motion to dismiss (Docket Entry No.14) is GRANTED.

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

3. All pending motions (Docket Entry No.23) are DENIED.

4. Although plaintiff is in custody of the Federal Bureau of Prisons, the Prison Litigation Reform Act still applies to plaintiff. Therefore, plaintiff shall pay the filing fee of $150.00 in periodic installments as required by 28 U.S.C. § 1915(b). The agency having custody of plaintiff John Carl Sutterley, Reg. No. 41881-179, shall collect this amount from the plaintiff's inmate trust fund account, when funds are available and forward it to the Court.

The Clerk will provide copies to the parties, to the TDCJ-CID Office of the General Counsel, P.O. Box 13084, Capitol Station, Austin, Texas 78711, Fax: 512-2159, and to the Federal Bureau of Prisons, FTC Oklahoma City Federal Transfer Center, Attn: Records, 7410 S. Macarthur, Oklahoma City, Oklahoma 73189.

It is so ORDERED.

SIGNED at Houston, Texas, on February 1, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE